507 So.2d 194 (1987)
Dorothy Couvillion BRANNON
v.
SHELTER MUTUAL INSURANCE COMPANY and Succession of Anna Joyce Meche Carriere through her appointed Provisional Administrator, Uallen J. Carriere, Jr.
No. 86-C-2386.
Supreme Court of Louisiana.
May 18, 1987.
Rehearing Denied June 18, 1987.
Jerold Edward Knoll, Knolls, Roy & Spruill, Marksville, for applicant.
E. Gregory Voorhies, Voorhies & Labbe, Lafayette, for respondent.
DIXON, Chief Justice.
The issue in this case is whether defendants sustained their burden of proving the affirmative defense of "sudden unconsciousness." Plaintiff, Mrs. Dorothy Brannon, was seriously injured when a car in which she was riding veered off the highway, crashing into a tree. The car was driven by Mrs. Anna Carriere and passengers included Mrs. Brannon seated in the front passenger seat, Ms. Julia Lingo seated behind the driver, and Mrs. Beatrice Couvillion seated behind Mrs. Brannon. The four ladies were enroute to an evening out in Lafayette and were engaged in conversation when Mrs. Carriere, who according to testimony had been driving within the speed limit on a clear night on a highway free of defects, drove off the west shoulder, through a ditch, hitting a hurricane fence and striking a tree. The car traveled 240 feet after leaving the road before coming to a stop at the tree. Mrs. Carriere, the driver, was killed, and the passengers were injured.
Mrs. Brannon sued Shelter Mutual Insurance Company as Mrs. Carriere's insurer and Mrs. Carriere's estate to recover damages for her injuries, alleging negligence. Mrs. Brannon has undergone numerous operations as a result of the accident and her medical expenses at the time of trial totaled $135,929.32. Totally disabled from working at the time of trial, she also required assistance in her daily living. Defendants *195 asserted the complete affirmative defense of sudden unconsciousness and argued that Mrs. Carriere was not negligent due to her unforeseeable sudden loss of consciousness over which she allegedly had no control. The trial judge recognized this defense and ruled in defendants' favor. The Third Circuit Court of Appeal affirmed, 496 So.2d 1354 (La.App. 3d Cir. 1986), holding that the affirmative defense of sudden unconsciousness must be proved by a preponderance of the evidence, rather than by "clear and convincing" evidence as asserted by Mrs. Brannon, and that defendants had sustained this burden. The court of appeal also found no merit to Mrs. Brannon's argument that the trial court erred by not allowing her to introduce evidence in cross-examination regarding an insurance settlement allegedly entered into by the defendant insurer and Mrs. Couvillion and Ms. Lingo. Mrs. Brannon appealed, and we granted writs.
In the past, Louisiana appellate courts have recognized that sudden or momentary loss of consciousness while driving is a complete defense to an action based on negligence if such loss of consciousness was not foreseeable. Martino v. Aetna Casualty & Surety Co., 351 So.2d 204 (La. App. 4th Cir.1977), writ denied 353 So.2d 1048 (La.1978); Shine v. Houston Fire & Casualty Insurance Co., 292 So.2d 341 (La.App. 2d Cir.1974); Reliance Insurance Co. v. Dickens, 279 So.2d 234 (La.App. 2d Cir.1973); Prejean v. Hanover Insurance Co., 233 So.2d 606 (La.App. 3d Cir.1970), writ refused 256 La. 256, 236 So.2d 32 (1970); Dull v. Employers Liability Assurance Corp., 233 So.2d 43 (La.App. 2d Cir.1970); Deason v. State Farm Mutual Automobile Insurance Co., 209 So.2d 576 (La.App. 3d Cir.1967); Dean v. Orgeron, 195 So.2d 150 (La.App. 1st Cir.1967); and Livaudais v. Black, 13 La.App. 345, 127 So. 129 (Orl.App.1930).[1]
In support of her argument, Mrs. Brannon cites two automobile collision cases, Reliance Insurance Co. v. Dickens, supra, and Dull v. Employers Liability Assurance Corp., supra, where the Second Circuit Court of Appeal clearly stated that the affirmative defense of sudden or momentary loss of consciousness must be established by clear and convincing evidence. In opposition, the defendants argue that C.C.P. 1005, which requires the special pleading of an affirmative defense, does not require that an affirmative defense must be proved by clear and convincing evidence.[2] Instead, they point to several cases in which the courts of appeal held that the party asserting an affirmative defense bears the burden of proving such defense by a preponderance of the evidence. Defendants cite Confederate Welding & Safety Supply v. Bank of the Mid-South, 458 So.2d 1370 (La.App. 2d Cir. 1984), writ denied 462 So.2d 1264 (La.1985), a case in which the court of appeal stated that the affirmative defenses of laches and estoppel must be proved by a preponderance of the evidence. Defendants also cite McDonald v. Champagne, 340 So.2d 1025 (La.App. 1st Cir.1976) and Crescent Cigarette *196 Vending Corp. v. Toca, 271 So.2d 53 (La.App. 4th Cir.1972), where the courts of appeal stated that the party who asserts an affirmative defense (in these cases, compensation and extinguishment, respectively) must prove such defense by a preponderance of the evidence. No cases have been cited by defendants which have decided the burden of proof in "sudden loss of consciousness" instances.
The defense of sudden unconsciousness is very similar to a defense to a negligence claim at one time recognized in our law: latent brake defect. Like sudden unconsciousness, latent brake defect was a complete defense to an action based on negligence. In both situations, the defendant driver could not be held to be negligent for an unforeseeable "defect," be it in the brake line or in one's own body, that would cause damage to another. In the latent brake defect cases, the courts held the party asserting such a defense to a very high burden of proof. In Sentry Insurance Co. v. Thomas, 360 So.2d 268, 269 (La.App. 4th Cir.1978), the court stated:
"Louisiana courts have recognized a jurisprudential rule that in order for latent defects to constitute a valid defense, the proof must be so strong that it excludes any other reasonable hypothesis with reference to the cause of accident except that it resulted solely from the alleged defects, and that it must establish that the driver was not aware of the defects and that the defects could not reasonably have been discovered and remedied by a proper inspection. See Metzger v. Scott, 244 So.2d 671 (La.App. 4th Cir.1971); Davis v. Logarbo, 346 So.2d 306 (La.App. 4th Cir.1977)...."
See also Kasperski v. Patterson Services, 371 So.2d 1254, 1257 (La.App. 3d Cir.1979), writ denied 373 So.2d 530 (La.1979). In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), this court considered plaintiff's case against a driver who struck plaintiff's car from the rear. In discussing the propriety of the jury instructions, we referred to Cartwright v. Firemen's Insurance Co. of Newark, N.J., 254 La. 330, 223 So.2d 822 (1969), a latent brake defect case, and quoted at 1334 from the Third Circuit Court of Appeal opinion in that case:
"`[H]owever, for latent defects to constitute a valid defense, the proof must be exceptionally strong so as to satisfy certain jurisprudential requirements.'"
We also made reference to the burden of proof discussion contained in the decision of Keck v. Yocum, 250 So.2d 468, 469 (La. App. 3d Cir.1971), which followed Cartwright, supra:
"`In order for latent defects to constitute a valid defense, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects. Cartwright v. Firemen's Insurance Company of Newark, New Jersey, 213 So.2d 154 (La.App. 3rd Cir., 1968), affirmed at 254 La. 330, 223 So.2d 822 (1969); Towner v. Milligan, 234 So.2d 500 (La.App. 3rd Cir., 1970); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4th Cir., 1967).'"
A high burden of proof is also required of the defendant driver who leaves his own lane and collides with another car in its correct lane of traffic. In this case, the driver must show by clear and convincing evidence that his sudden presence in the opposite lane was due to unexpected and unforeseen circumstances over which he had no control. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957). In Simon v. Ford Motor Co., 282 So.2d 126, 133 (La. 1973), we quoted from Rizley v. Cutrer, supra, the rationale underlying this legal principle:
"The trespassing motorist `having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command.... We say this because it seems only reasonable to resolve that a motorist *197 owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof.' (Italics ours.)"
See also Johnigan v. State Farm Mutual Automobile Insurance Co., 345 So.2d 1277, 1279 (La.App. 3d Cir.1977).
As in the latent brake defect and lane crossing cases, defendants in sudden unconsciousness cases should be held to a higher burden of proof than by a mere preponderance of the evidence. The party asserting the defense desires to escape liability by laying the blame on something unforeseeable. This "unforeseeability" prejudices the plaintiff because he can do nothing to anticipate and avoid the defense, unlike the plaintiff in cases where the affirmative defenses of compensation, extinguishment or supposed defenses of laches and estoppel (the affirmative defenses cited by defendants in the case at bar) are asserted. Because of the plaintiff's lack of knowledge or control, we conclude that a high burden of proof is warranted, and that the party asserting the affirmative defense of sudden unconsciousness to a negligence claim must prove the facts giving rise to the defense by clear and convincing evidence. Reliance Insurance Co. v. Dickens, supra and Dull v. Employers Liability Assurance Corp., supra.
"Clear and convincing evidence" is an intermediate standard of persuasion. It requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. The existence of the disputed fact must be highly probable; that is, much more probable than its nonexistence. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976); State v. Johnson, 458 So.2d 937 (La.App. 1st Cir.1984), writ denied 463 So.2d 593 (La. 1985). See also Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952) and McCormick on Evidence, § 340(b), 2d Ed., 1972 at 796.
The sole witness testifying that Mrs. Carriere showed signs of unconsciousness was Ms. Lingo, who was seated in the back seat behind the driver Mrs. Carriere. Ms. Lingo testified that she saw Mrs. Carriere slump over the steering wheel and observed her hands go through the openings in the wheel. She also stated that Mrs. Carriere did not respond when called to, nor did she take any further action. However, when asked at trial, "Did it appear to you that she was conscious?", Ms. Lingo replied, "I couldn't tell." No other witness corroborated Ms. Lingo's observations of Mrs. Carriere slumped over the wheel. Additionally, Ms. Lingo's testimony that the conversation preceding the accident concerned cowboy boots was contradicted by both Mrs. Brannon and Mrs. Couvillion who said that the conversation involved their deceased husbands. All witnesses testified that Mrs. Carriere was driving within the speed limit and that she was driving in a normal manner until the car veered off the highway. The autopsy report was not conclusive that Mrs. Carriere suffered a sudden loss of consciousness. In fact, it listed cause of death as multiple blunt force injuries secondary to the motor vehicle collision. The mode of death was listed as accidental. The report also noted the presence of atherosclerotic cardio-vascular disease with up to 50% narrowing of the coronary arteries, but no conclusions as to cause of death were drawn from this discovery.
Defendants' case boils down to the testimony of one witness who viewed the accident from the back seat, or while she was reaching over the seat for the steering wheel. Even in this position she could not determine if Mrs. Carriere was conscious. We find that the evidence presented is not *198 clear and convincing, nor does its quality exclude other reasonable hypotheses as to the cause of the accident.
For these reasons the judgments of the courts below are reversed and there is now judgment in favor of the plaintiff and against the defendants decreeing the liability of the defendants for the injuries to plaintiff; the case is remanded to the court of appeal to fix plaintiff's damages, all at the cost of defendants.
LEMMON, J., concurs.
COLE, J., dissents and assigns reasons.
COLE, Justice, dissenting.
I agree the party asserting the affirmative defense of sudden unconsciousness to a negligence claim must prove the facts giving rise to the defense by clear and convincing evidence. However, I believe that burden was borne in this case.
The basic facts disclose the decedent driver was afflicted with the presence of atherosclerotic cardio-vascular disease with up to 50% narrowing of the coronary arteries. With this health background she, without any plausible explanation, veered off the highway, crossed a ditch, struck a fence, and finally struck a tree after traveling 240 feet. The weather was clear, no skid marks were left on the highway and there were no defects in the highway itself. The trial court obviously viewed these facts within the context of Ms. Lingo's testimony to the effect the driver slumped over the steering wheel, with her hands and arms going through the wheel up to her elbows, and hereafter took no action whatsoever to control the vehicle.
The trial court's conclusion that the driver suddenly lost consciousness is to be accorded great weight, and when viewed in light of the applicable standard of persuasion (the existence of the disputed fact need be much more probable than its nonexistence), is not clearly wrong. To require more would seem to be requiring proof beyond a reasonable doubt. I therefore respectfully dissent.
NOTES
[1] Prior courts have only viewed this affirmative defense in its relation to a claim of negligence and have not considered the possible implications of "legal fault" (fault without negligence) theories under C.C. 2315 and articles following. See Rozell v. Louisiana Animal Breeders Cooperative, 496 So.2d 275 (La.1986); Loescher v. Parr, 324 So.2d 441 (La.1975); Turner v. Bucher, 308 So.2d 270 (La.1975); and Holland v. Buckley, 305 So.2d 113 (La.1974). Because the parties in the instant case did not brief and argue nor did the lower courts consider such theories of recovery, and because in this case we can adequately deal with the defense on other grounds, we save any discussion on the applicability of "legal fault" theories to the defense of sudden unconsciousness for another day.
[2] Article 1005 of the Code of Civil Procedure reads:

"The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."